**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)
Jordan D. Santo, Esq. (152892015)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **RANDY WERNER,** | : | **Civil Action No.** |
| **204 Elm Avenue** | : | |
| **Norwalk, IA 50211** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **VERIZON WIRELESS d/b/a** | : | |
| **VERIZON COMMUNICATIONS, INC.** | : | |
| **Atlantic Terminal Mall, Flatbush Avenue** | : | |
| **New York, NY 11217** | : | |
| | : | |
| **One Verizon Way** | : | |
| **Basking Ridge, NJ 07920** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Randy Werner (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Verizon Wireless d/b/a Verizon Communications, Inc. (hereinafter "Defendant"), for violations of the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYHRL"). In support thereof, Plaintiff avers as follows:

## **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Verizon Wireless d/b/a Verizon Communications, Inc. is a telecommunications conglomerate with a location at Atlantic Terminal Mall, Flatbush Avenue, New York, NY 11217 and a corporate headquarters located at One Verizon Way, Basking Ridge, NJ 07920.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States

and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) because the Defendant either is considered as residing in this judicial district or at home in this judicial district and therefore meets the residency requirements for venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADEA and the NYHRL.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging age discrimination and retaliation against Defendant.

14. The Charge was assigned the Charge Number 530-2020-01598 and was dual filed with the New York Division on Human Rights.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated January 27, 2023. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff was born on February 19, 1964.

21. On February 7, 2011, Defendant hired Plaintiff as a Sales Representative in Des Moines, Iowa.

22. Plaintiff was well qualified for his position and performed well.

23. In or around 2013, Defendant promoted Plaintiff to the position of Assistant Store Manager in Russellville, Arkansas.

24. Plaintiff was well qualified for his position and performed well.

25. In or around 2015, Plaintiff applied for and was accepted for a lateral move as Assistant Store Manager in Fayetteville, North Carolina.

26. Plaintiff was well qualified for his position performed well.

27. In or around June or July 2016, Defendant promoted Plaintiff to the position of Store Manager in Chambersburg, Pennsylvania.

28. Plaintiff was well qualified for his position and performed well.

29. While in Chambersburg, Plaintiff rebuilt the store, which had been struggling, so that by May 2017, the Chambersburg Store was the top producing store in the greater-Philadelphia area.

30. As a result of Plaintiff's success, his District Manager encouraged Plaintiff to apply to Defendant's Verizon Voice Matters, a special training program for Defendant's employees, and for which he was ultimately selected.

31. During a Verizon Voice Matter meeting, Plaintiff met the Regional Director for the Mountain State region.

32. She invited Plaintiff to apply for a lateral move to rebuild a struggling store, which would entail a significant pay increase.

33. Plaintiff applied and was accepted for the General Manager position in Fort Collins, Colorado, which he began in or around August or September 2017.

34. While at the Fort Collins Store, Plaintiff received an award for increasing productivity.

35. In the summer of 2018, Defendant requested that Plaintiff relocate to Brooklyn, New York to rebuild the Bayridge Store, which was struggling at the time.

36. Plaintiff agreed to the transfer.

37. Defendant agreed to pay for his relocation costs.

**PLAINTIFF WAS TRANSFERRED TO THE BAYRIDGE STORE AND HAD TO TRAVEL BACK TO COLORADO TO ASSIST HIS WIFE WITH THEIR MOVE**

38. On November 1, 2018, Plaintiff began working at the Bayridge Store in Brooklyn, New York.

39. On November 26, 2018, Plaintiff flew back to Colorado to assist his wife with their official move from Colorado to New York.

40. Plaintiff did not return to the store until December 4, 2018.

41. Jesus Cortez (late 20's/early 30's), Solutions Specialist, was the Acting Manager of the Bayridge Store in his absence.

**PLAINTIFF WAS SUSPICIOUS OF A DISHEVELED CUSTOMER WHO ADDED LINES TO HIS ACCOUNT AND WAS SUSPICIOUS OF FRAUDULENT ACTIVITY**

42. On December 5, 2018, a customer entered the store who stood out because of his disheveled, dirty and slovenly appearance.

43. The customer had opened an account on December 2, 2018 while Plaintiff was away and had returned to the store to add additional lines to this account.

44. A Solutions Specialist in Plaintiff's store serviced the customer.

45. Plaintiff was immediately suspicious about the customer and wrote down the customer's name (Joel LNU) and account information to check his account in three (3) weeks to determine whether he paid his account because Plaintiff suspected that he was engaged in fraud.

46. Approximately three (3) weeks later, Plaintiff reviewed this customer's account and was surprised that he had paid.

**PLAINTIFF REPORTED HIS SUSPICIONS OF THE CUSTOMER COMMITTING FRAUD TO HIS DISTRICT MANAGER**

47. Nonetheless, Plaintiff told Jean Ewald, District Manager, about his suspicions at the time.

**THE CUSTOMER RETURNED TO THE BAYRIDGE STORE AND PLAINTIFF ENSURED THAT HE HAD PAID HIS ACCOUNT**

48. Over the next couple of months, this customer returned to the Bayridge Store.

49. The Solutions Specialists always serviced this customer.

50. Although his appearance remained disheveled and slovenly, after confirming that he had paid his account, Plaintiff did not observe this customer engage in suspicious activity.

**PLAINTIFF SERVED AS THE ACTING DISTRICT MANAGER, THE GENERAL MANAGER OF THE BAYSIDE STORE AND THE GENERAL MANAGER OF THE ATLANTIC TERMINAL STORE**

51. In the middle of February 2019, Mr. Ewald requested that Plaintiff serve as Acting District Manager while he was on a two-week vacation.

52. Mr. Ewald also requested that he transfer to the Atlantic Terminal Store in Brooklyn, New York, which was a bigger store.

53. Plaintiff agreed to both requests.

54. For approximately two (2) weeks, Plaintiff served as Acting District Manager, the General Manager of the Atlantic Terminal Store and the General Manager of the Bayridge Store until his replacement could begin.

## THE CUSTOMER RETURNED TO THE BAYRIDGE STORE TO OPEN A NEW LARGE ACCOUNT ON PLAINTIFF'S DAY OFF

55. During this time period, on February 19, 2019, while Plaintiff was on a scheduled day off for his birthday, the customer returned to the Bayridge Store.

56. Mr. Cortez was Acting Manager in Plaintiff's absence.

57. The customer opened a large account.

58. Plaintiff was unaware at that time that the customer had returned to open a new account.

## THE CUSTOMER CALLED PLAINTIFF INQUIRING ABOUT A CASH DEPOSIT REQUIRED FOR EACH NEW LINE, WHICH PLAINTIFF COULD NOT FIND ANY RECORD OF

59. On or around March 14, 2019, Plaintiff received a telephone call from the same customer while he was working at the Atlantic Terminal Store.

60. The customer inquired why the Bayridge Store charged him a $400 cash deposit for each new line he added to his account while a store in upstate New York recently did not charge him a deposit when he added a line.

61. Plaintiff was confused by the customer's question and unaware of any deposit requirement.

62. Plaintiff then reviewed the customer's recent transaction history and did not see any invoices or charges for a deposit to add a new line.

**PLAINTIFF REPORTED THE PHONE CALL WITH THE CUSTOMER TO MR.
EWALD AND REPORTED THE 50 TO 60 LINES THE CUSTOMER HAD ADDED
OVER THE PAST FEW MONTHS**

63. Plaintiff reported the telephone call, transaction history and his suspicion of fraudulent
    activity to Mr. Ewald.

64. In response, Mr. Ewald instructed Plaintiff to conduct a more thorough review of the
    customer's accounts.

65. Plaintiff discovered that this customer had added 50 to 60 lines to several accounts over
    the past few months.

66. Plaintiff printed the account history, placed them in chronological order, and presented his
    findings to Mr. Ewald.

67. In turn, Mr. Ewald contacted Human Resources about Plaintiff's findings.

**HUMAN RESOURCES INTERVIEWED PLAINTIFF REGARDING HIS FINDINGS ON
THE CUSTOMER'S ACCOUNTS AND CALLED THE CUSTOMER AND ASKED HIM
QUESTIONS AS DIRECTED BY HUMAN RESOURCES**

68. Later that week, Human Resources interviewed Plaintiff about his findings regarding this
    customer.

69. Human Resources prepared a list of questions and instructed Plaintiff to contact the
    customer by speaker phone and ask him the prepared questions.

70. Human Resources instructed Plaintiff not to identify that Human Resources was listening
    to the call.

71. Plaintiff complied with Human Resources' request.

72. Plaintiff did not hear anything further from Defendant regarding his reported findings of
    fraud until July 2019.

## MR. EWALD ENCOURAGED PLAINTIFF TO APPLY FOR OPEN DISTRICT MANAGER POSITIONS DUE TO HIS EXCELLENT PERFORMANCE

73. Based on the success of the Bayridge Store and Atlantic Terminal Store, Mr. Ewald encouraged Plaintiff to apply for vacancies for any District Manager position throughout the country, which would be a significant promotion for Plaintiff.

## PLAINTIFF APPLIED TO FOUR AVAILABLE DISTRICT MANAGER POSITIONS, BUT WAS NOT SELECTED

74. Thereafter, Plaintiff applied to approximately four (4) District Manager openings, including a vacancy in Omaha.

75. Plaintiff attended several interviews for the District Manager position at various locations, but he was not the selected candidate.

## PLAINTIFF COMPLAINED TO MR. EWALD THAT HE WAS NOT SELECTED FOR THE DISTRICT MANAGER POSITION BECAUSE OF HIS AGE

76. Plaintiff complained to Mr. Ewald of age discrimination, by stating that he felt that he was not being selected for the position because of his age.

77. Plaintiff also commented that if he was selected, then he would be the oldest District Manager by 10 to 15 years.

78. As it was, Plaintiff was one of the oldest General Managers employed by Defendant, as approximately ninety-percent (90%) of Defendant's General Managers were in their late 20's to early 30's.

## PLAINTIFF APPLIED FOR ANOTHER DISTRICT MANAGER POSITION, BUT WAS NOT SELECTED

79. In June 2019, Plaintiff applied for another District Manager vacancy in Chicago.

80. In July 2019, Plaintiff was notified that he was a finalist for the District Manager position in Chicago.

81. Defendant approved Plaintiff's request to travel to Chicago to interview for the position, and it agreed to reimburse him for his travel costs, which he placed on the corporate credit card.

82. The following week, Plaintiff flew to Chicago to interview for the District Manager position.

83. Ultimately, Plaintiff was not selected for the position.

**DEFENDANT'S CORPORATE SECURITY INTERVIEWED PLAINTIFF REGARDING HIS FINDINGS OF THE CUSTOMER'S FRAUD**

84. In early July 2019, Plaintiff received a telephone call from Corporate Security to schedule an in-person interview about his reported findings of fraud.

85. Plaintiff attended the in-person interview and answered questions for approximately three (3) to four (4) hours.

**DEFENDANT'S CORPORATE SECURITY INTERVIEWED PLAINTIFF A SECOND TIME REGARDING HIS FINDINGS OF THE CUSTOMER'S FRAUD AND THEN PLACED HIM ON ADMINISTRATIVE LEAVE**

86. In mid-July, Corporate Security requested that Plaintiff attend a second in-person interview.

87. Plaintiff answered questions for another one (1) to two (2) hours.

88. At the conclusion, Plaintiff was informed that he would be placed on paid administrative leave.

89. No further explanation was provided.

90. Plaintiff was surprised because he had been the one who discovered and reported the fraudulent activity.

91. Plaintiff subsequently learned that this customer had opened fraudulent accounts prior to him being General Manager of the Bayridge Store.

## MR. EWALD CALLED PLAINTIFF AND TERMINATED HIM FOR ALLEGED CODE OF CONDUCT VIOLATION

92. On or around July 26, 2019, Mr. Ewald contacted Plaintiff by telephone.

93. Mr. Ewald informed Plaintiff that he was terminated for violating the Code of Conduct.

94. Plaintiff was not provided any specific information on how he allegedly violated the Code of Conduct.

95. Prior to Plaintiff's termination, he had not received any corrective actions or discipline.

96. Defendant did not follow its own progressive disciplinary policy when it terminated him.

## DEFENDANT TREATED YOUNGER EMPLOYEES MORE FAVORABLY THAN PLAINTIFF

97. However, Tyrell Wineglass (early 30's), Solutions Specialist, who worked as General Manager of the Bayridge Store location, while Plaintiff worked out of the Atlantic Terminal Store, was allowed to continue to work.

98. Both Mr. Winegless and Mr. Cortez were present and assisted Joel during these transactions, when he engaged in fraud, including when he opened the largest fraudulent account, but neither were terminated.

99. Instead, Mr. Cortez was promoted shortly afterwards to General Manager.

100. Following Plaintiff's termination, Defendant withheld his last two (2) paychecks to allegedly reimburse it for expenses.

101. Yet, Defendant failed to pay the Corporate Credit Card account, in Plaintiff's name, for the travel expenses and the balance remained outstanding.

102. Defendant also falsely reported that Plaintiff owed Defendant approximately $63,000 in unpaid expenses, presumably related to his moving costs that it agreed to pay in connection with his relocation(s).

103. Plaintiff believes that Defendant failed to hire Plaintiff for the District Manager positions to which he had applied because of his age in violation of the ADEA.

104. Plaintiff believes that he was terminated in retaliation for complaining of age discrimination in violation of the ADEA and the NYHRL.

105. Plaintiff believes that he was terminated because of his age in violation of the ADEA and the NYHRL.

106. Plaintiff believes that Defendant failed to pay him for hours worked and is pursuing costs against him in retaliation for complaining of age discrimination and because of his age in violation of the ADEA and the NYHRL.

## COUNT I – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

107. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

108. Plaintiff was born on February 19, 1964.

109. Plaintiff was qualified to perform the job.

110. Defendant terminated Plaintiff.

111. Defendant treated younger employees more favorably than Plaintiff.

112. Defendant has no legitimate non-discriminatory reason for its actions.

113. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – AGE DISCRIMINATION
## NEW YORK HUMAN RIGHTS LAW

114. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

115. Plaintiff was born on February 19, 1964.

116. Plaintiff was qualified to perform the job.

117. Defendant terminated Plaintiff.

118. Defendant treated younger employees more favorably than Plaintiff.

119. Defendant has no legitimate non-discriminatory reason for its actions.

120. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III – RETALIATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

121. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

122. Plaintiff engaged in activity protected by ADEA.

123. Plaintiff internally complained about age discrimination.

124. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

125. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## NEW YORK HUMAN RIGHTS LAW

126. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

127. Plaintiff engaged in activity protected by the NYHRL.

128. Plaintiff internally complained about age discrimination.

129. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

130. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Randy Werner, requests that the Court grant him the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees,

agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADEA and the NYHRL.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: April 27, 2023                    **By:**

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*